DELMOE, RESPONDENT, *v.* LONG, ADMINISTRATOR, ET AL., APPELLANTS.

(No. 2,363.)

(Submitted January 15, 1907.   Decided February 11, 1907.)

(88 Pac. 778.)

*Equity — Trusts — Mining   Claims—Witnesses—Competency—Evidence—Limitations—Fraud—Appeal—Laches.*

Equity—Constructive   Trusts—Witnesses—Competency—Transactions with Deceased Persons.
    1.   Plaintiff, in a suit brought to obtain a decree declaring the executor and heirs of the estate of plaintiff's alleged co-owner H. in a mining claim   trustees for his benefit of an undivided interest therein, was incompetent, under section 3162 of the Code of Civil Procedure, as amended (Laws, 1897, p. 245), to testify as to conversations had between him and H. pertaining to the patent to the claim, settlements of accounts between them tending to show a balance in favor of plaintiff, and declarations of decedent that the former was one of the grantees named in the patent, when in fact his name was omitted.
Same—Evidence—Declarations Against Interest.
    2.   In a suit to have the executor and heirs of plaintiff's alleged co-owner in a mining claim declared trustees for his benefit, declarations made by the decedent in his lifetime after issuance of patent, that plaintiff was still the owner of an interest in the claim, when in fact his name had been fraudulently omitted from the patent, and evidence of the fact that decedent had joined with plaintiff a year prior to his death in a lease of the claim with an agreement to sell upon certain

conditions, were in effect declarations of the deceased in disparagement of his title and competent against his successors in interest, under Code of Civil Procedure, sections 3125 and 3146, subdivision 4.

Same—Evidence—Fraud—Patent to Mining Claim—Laches.

3. The evidence set forth in the foregoing paragraph was also competent as tending to show concealment of the fraud practiced by deceased in securing patent in his own name to the exclusion of the plaintiff, and to excuse or rebut any charge of laches against plaintiff for delay in bringing suit to establish his interest.

Same—Evidence—Admissibility—Harmless Error.

4. Where plaintiff in a suit to enforce a constructive trust had been permitted, without objection, to introduce a judgment-roll as part of his case in chief, permission to reoffer it in rebuttal over a general objection, if error, was harmless, inasmuch as, no motion to strike it from the record having been made, even if excluded on rebuttal, it would still have remained in the record.

Mines—Assessment Work—Nonperformance—Patent—Conclusiveness.

5. *Ex parte* proceedings had under section 2324 of the United States Revised Statutes by one of two co-owners of a mining claim by "advertising out" his co-owner's interest for alleged failure to contribute his share of the annual assessment work, have no force or effect where in fact no assessment work had been done by the party publishing the notice; and therefore the issuance of patent to the latter to the exclusion of the former was not conclusive.

Mines—Assessment Work—Nonperformance—Forfeitures—Statutes—Construction.

6. Section 2324 of the United States Revised Statutes, providing that where one of several co-owners of a mining claim fails to contribute his share of the expenses of the annual representation work, his interest shall become the property of his co-owners upon the giving of proper notice, is a statute of forfeitures and must be strictly construed.

Mines—Patent—Assessment Work.

7. *Quaere:* After application for patent to a mining claim and completion of publication of notice, is any further annual representation work on the claim necessary?

Equity—Constructive Trusts—Enforcement—Limitations.

8. Where the gist of a suit to enforce a constructive trust in an interest in a mining claim was the fraud of plaintiff's co-owner in obtaining patent in his own name and the concealment of this fact thereafter from plaintiff, subdivision 4 of section 524 of the Code of Civil Procedure, providing that an action for relief on the ground of fraud or mistake shall be commenced within two years after the discovery by the aggrieved party of the facts constituting the fraud or mistake was applicable.

Appeals—Briefs—Assignments of Error.

9. In the absence of an assignment of error in the brief of appellant challenging the sufficiency of the pleadings, the contention that respondent cannot recover upon them will not receive consideration on appeal.

Equity—Constructive Trusts—Evidence—Sufficiency—Findings.

10. Evidence, adduced in a suit to have defendants declared trustees, for the benefit of plaintiff, of an undivided interest in a mining claim, examined, and *held* sufficient to sustain the findings of the court that plaintiff was the owner of the interest in the claim sued for, and that defendant's predecessor, plaintiff's co-owner in the claim, had obtained

patent in his own name with the intent to defraud plaintiff of such interest.

Equity—Appeal—Evidence—Review.

11. Under Act of 1903 (2d Extra. Session, p. 7) the supreme court will not disturb the findings of the trial court in an equity suit when the evidence does not clearly preponderate against them.

Same—Constructive Trusts—Mines—Laches—Evidence.

12. Where, in a suit to enforce a constructive trust in a mining claim, it appeared that the proceedings had in the land office looking to the procurement of patent had been conducted by plaintiff's co-owner, who had died prior to bringing of suit; that plaintiff had been assured by him repeatedly that the patent ran to both of them, whereas, by reason of fraudulent representations to the officers of the land department, it had been issued to deceased alone; that this knowledge did not come to plaintiff until after his associate's death; that because of decedent's conduct in dealing with the property after patent as if both were still co-owners, plaintiff did not make any inquiry; that the value of the property had not changed appreciably since patent; and that as soon as plaintiff ascertained that his trust had been betrayed by his associate he commenced suit, he was not guilty of laches.

*Appeal from District Court, Silver Bow County; George M. Bourquin, Judge.*

SUIT by Aquilino Delmoe against Joseph V. Long, as administrator of the estate of Herman H. Horst, deceased, and others. From a decree in favor of plaintiff, defendants appeal. Affirmed.

*Messrs. McBride & McBride,* for Appellants.

The claimant of mining ground, until he has secured a patent therefor, must annually perform, within the year $100 worth of work in representing the same. (U. S. Rev. Stats., sec. 2324; *Bay State S. M. Co.* v. *Brown,* 21 Fed. 167; *Mt. Diable Mill etc. Co.* v. *Callison,* 5 Saw. 439, Fed. Cas. No. 9886; *Belk* v. *Meagher,* 104 U. S. 279, 26 L. Ed. 735; *Jackson* v. *Robey,* 109 U. S. 440, 3 Sup. Ct. 301, 27 L. Ed. 990; *Smelting Co.* v. *Kemp,* 104 U. S. 636, 26 L. Ed. 875.) The only exception to the general rule that representation work must be done until a patent has been issued therefor, is that the courts have construed a receiver's receipt as equivalent to a patent. (1 Snyder on Mines, sec. 493; 2 Lindley on Mines, pp. 1182, 1183.)

A party who charges fraud is bound to clearly and distinctly prove the fraud which he alleges. (Kerr on Fraud, Am. ed. by Bump, 382; *Griswold* v. *Sabin,* 51 N. H. 167, 12 Am. Rep. 76; *Kaine* v *Weigley,* 22 Pa. 179; *Briscoe* v. *Bronaugh,* 1 Tex. 326, 46 Am. Dec. 108.) If the party claiming fraud does no more than create an equilibrium, he fails to make out his case. (*Kaine* v. *Weigley,* 22 Pa. 179.) A transaction fair and honest on its face must be regarded as free from fraud until some kind of evidence is adduced to show that it is tainted with fraud. (Kerr on Fraud, Am. ed. by Bump, 384; *Teakle* v. *Bailey,* 2 Brock. 43, Fed. Cas. No. 13,811; *Sanborn* v. *Stetson,* 2 Story, 482; Fed. Cas. No. 12,291; *Walker* v. *Carrington,* 74 Ill. 446; *Hamilton* v. *Beal,* 2 Har. & J. 414; *Buck* v. *Sherman,* 2 Doug. (Mich.) 176.) Fraud cannot be inferred because it is possible, or even probable, but it must be shown by positive proof, or by circumstances sufficient to leave no serious doubt of its existence. (*Buck* v. *Sherman,* 2 Doug. (Mich.) 176; *In re Will of Vanderveer,* 20 N. J. Eq. 463; *Pares* v. *Pares,* 33 L. J. Ch. 218, 10 Jur., N. S. 90 ) Where every allegation of fraud charged in the bill is met and denied by answer, and no effort is made by the complainant to sustain the charge of fraud, the defendant is entitled to the full benefit of the answer, so far as it is responsive to the bill. (*Stubblefield* v. *McRaven,* 5 Smedes & M. 130, 43 Am. Dec. 502; *Allen* v. *Cole,* 29 N. J. Eq. 286, 59 Am. Dec. 416; *McCarthy* v. *White,* 21 Cal. 495, 82 Am. Dec. 754.)

Plaintiff, in an action such as this, must set up in his pleading the reason why he has not sooner prosecuted his case. (*Badger* v. *Badger,* 2 Wall. 87, 17 L. Ed. 836; *Hardt* v. *Heidweyer,* 152 U. S. 547, 14 Sup. Ct. 671, 38 L. Ed. 548.) Without such allegation no complaint in equity states a cause of action, and the authorities agree that the point may be raised upon demurrer or at any stage of the case, even in the appellate court. (*Lakin* v. *Sierra Butte M. Co.,* 25 Fed. 337; *Pratt* v. *Cal. M. Co.,* 9 Saw. 354, 24 Fed. 869; *Hagerman* v. *Bates,* 24 Colo. 71, 49 Pac. 139; *Woodmanse Min. Co.* v. *Williams,* 68 Fed. 489, 15 C. C. A. 520;

*Murphy* v. *De France,* 105 Mo. 53, 15 S. W. 949, 16 S. W. 861; *Wood* v. *Carpenter,* 101 U. S. 135, 140, 25 L. Ed. 807; *Hammond* v. *Hopkins,* 143 U. S. 224, 251, 12 Sup. Ct. 418, 36 L. Ed. 134; *Lansdale* v. *Smith,* 106 U. S. 391, 394, 1 Sup. Ct. 350, 27 L. Ed. 219; *Felix* v. *Patrick,* 145 U. S. 317, 332, 12 Sup. Ct. 862, 36 L. Ed. 719; *Foster* v. *Mansfield etc. R. Co.,* 146 U. S. 88, 13 Sup. Ct. 28, 36 L. Ed. 899; *Fisher* v. *Boody,* 1 Curt. 206, Fed. Cas. No. 4814; *Carr* v. *Hilton,* 1 Curt. 390, Fed. Cas. No. 2437; *Moore* v. *Greene,* 2 Curt. 202, Fed. Cas. No. 9763; *Lady Washington C. Co.* v. *Wood,* 113 Cal. 482, 45 Pac. 809.)

The trust attempted to be set up in plaintiff's complaint is, if any, a resulting trust, not by virtue of any agreement between the parties, but by virtue of an' alleged fraud perpetrated upon the plaintiff, Delmoe, by Horst, in his lifetime. The trust results, if at all, from what is claimed to have been a fraudulent act on the part of Horst, advertising out the defendant and in fraudulently making a record in the land office of having advertised the plaintiff out of the Sarah lode claim for refusal to pay his proportion of the representation work for the year 1892. The trust, if any, must arise, if at all, by operation of law, and in all such cases, whether it be called an implied, resulting or constructive trust, the statute begins to run from the date of the alleged wrong. (Perry on Trusts, sec. 865; Beach on Trusts, secs. 208, 209; *Hecht* v. *Slaney,* 72 Cal. 363, 14 Pac. 88; *Wilmerding* v. *Russ,* 33 Conn. 67; *Brackin* v. *Newman,* 121 Ala. 311, 26 South. 3; *Cox* v. *Mensing* (Miss.), 30 South. 41; *Nougues* v. *Newlands,* 118 Cal. 102, 50 Pac. 386; *Barker* v. *Hurley,* 132 Cal. 21, 63 Pac. 1071; *Braun* v. *First G. E. L. Church,* 198 Pa. 152, 47 Atl. 963.)

Plaintiff's alleged cause of action was barred by laches. (*Hammond* v. *Hopkins,* 143 U. S. 224, 12 Sup. Ct. 418, 36 L. Ed. 134; *Badger* v. *Badger,* 2 Wall. 87, 17 L. Ed. 836; *Penn M.· L. Ins. Co.* v. *Austin,* 168 U. S. 685, 18 Sup. Ct. 223, 42 L. Ed. 626; *Willard* v. *Wood,* 164 U. S. 502, 17 Sup. Ct. 176, 41 L. Ed. 531; *Galliher* v. *Codwell,* 145 U. S. 368, 12 Sup. Ct. 873, 36 L. Ed. 738; *Johnston* v. *Standard Mfg. Co.,* 148 U. S. 360, 13 Sup.

Ct. 585, 37 L. Ed. 480; *Twin Lick Oil Co.* v. *Marbury,* 91 U. S. 587, 23 L. Ed. 328; *Felix* v. *Patrick,* 145 U. S. 317, 12 Sup. Ct. 862, 36 L. Ed. 719; *Naddo* v. *Bardon,* 51 Fed. 493, 2 C. C. A. 335; *Abraham* v. *Ordway,* 158 U. S. 416, 15 Sup. Ct. 894, 39 L. Ed. 1036; *Whitney* v. *Fox,* 166 U. S. 637, 17 Sup. Ct. 713, 41 L. Ed. 1145; *Gildersleeve* v. *New Mexico Min. Co.,* 161 U. S. 573, 16 Sup. Ct. 663, 40 L. Ed. 812; *Johnson* v. *Toulmin,* 18 Ala. 50, 52 Am. Dec. 212; *Mackall* v. *Casilear,* 137 U. S. 556, 11 Sup. Ct. 178; *Mantle* v. *Speculator M. Co.,* 27 Mont. 473, 71 Pac. 665.)

*Mr. E. B. Howell* and *Mr. M. J. Cavanaugh,* for Respondent.

A person deceived by another owes him no duty of active vigilance in the discovery of the fraud. (*Brown* v. *Post,* 62 N. Y. 651; *Baker* v. *Lever,* 67 N. Y. 304, 23 Am. Rep. 117; *Baker* v. *Spenser,* 47 N. Y. 562.) Except it can be shown that lapse of time or laches caused prejudice to the adverse party, it will not bar recovery in equity. (*Nudd* v. *Powers,* 136 Mass. 273; *Mott* v. *Maris* (Tex. Civ. App.), 29 S. W. 825; *Hamilton* v. *Dooley,* 15 Utah, 280, 49 Pac. 769; *Townsend* v. *Vanderwerker,* 160 U. S. 171, 16 Sup. Ct. 258, 40 L. Ed. 383; *Richardson* v. *Green,* 61 Fed. 432, 9 C. C. A. 565.) There can be no acquiescence without a full knowledge of all of the facts, and of a person's rights. (18 Am. & Eng. Ency. of Law, 2d ed., p. 99; *Lux* v. *Haggin,* 69 Cal. 255, 10 Pac. 674; *Rigney* v. *Tacoma Light Co.,* 9 Wash. 576, 38 Pac. 147, 26 L. R. A. 425.) Where the delay is not sufficient to bar the legal remedy, equity should not bar the remedy for laches, except there has been great prejudice to the defendant. (*McDermott* v. *Anaheim Water Co.,* 124 Cal. 112, 56 Pac. 779; *Waller* v. *Nelson,* 106 Ala. 535, 18 South. 154; *The Oregon,* 73 Fed. 846.) The effect of lapse of time upon a cause of action, when the delay is unproductive of, and unaccompanied by, any hardship or injustice to the other party is determined by the provisions of the statute of limitations; in order to constitute laches there must be something more than mere lapse of time which would bar the remedy under the statute of limitations.

(*Cahill* v. *Superior Court,* 145 Cal. 42, 78 Pac. 467; *Kleinclaus* v. *Dutard,* 147 Cal. 245, 81 Pac. 516.) Where one has been defrauded by the misrepresentations of another, he owes the latter no duty of active vigilance to discover the fraud. For this reason the rule that if he had used diligence to discover fraud, he might have done so, does not apply in such cases. He is charged with notice only after actual discovery of the fraud. (*Baker* v. *Lever,* 67 N. Y. 304, 23 Am. Rep. 117; *Brown* v. *Post,* 62 N. Y. 651; *Baker* v. *Spence,* 47 N. Y. 562.)

If Horst proceeded to patent while he and Delmoe were cotenants in the Sarah lode claim, the title acquired by him and his successors in interest would inure to the benefit of the plaintiff, his cotenant. (*Lakin* v. *Sierra etc. Min. Co.,* 25 Fed. 341; *Johnson* v. *Towsley,* 13 Wall. 72, 20 L. Ed. 485; *Brundy* v. *Mayfield,* 15 Mont. 201, 38 Pac. 1067; *Malaby* v. *Rice,* 15 Colo. App. 364, 62 Pac. 228; *Turner* v. *Sawyer,* 150 U. S. 578, 14 Sup. Ct. 192, 37 L. Ed. 1189; *Haynes* v. *Briscoe,* 29 Colo. 137, 67 Pac. 156; *Riste* v. *Morton,* 20 Mont. 139, 49 Pac. 656; *Ballard* v. *Golob* (Colo.), 83 Pac. 378.) And the latter could enforce the transfer of title to him at any time after the issuance of the patent. (*Turner* v. *Sawyer,* 150 U. S. 578, 14 Sup. Ct. 192, 37 L. Ed. 1189; *Sussenbach* v. *First Nat. Bank,* 5 Dak. 477, 41 N. W. 662; *Brundy* v. *Mayfield,* 15 Mont. 201, 38 Pac. 1067; *Malaby* v. *Rice,* 15 Colo. App. 364, 62 Pac. 228; *Ballard* v. *Golob* (Colo.), 83 Pac. 378.)

MR. CHIEF JUSTICE BRANTLY delivered the opinion of the court.

This action was brought for the purpose of obtaining a decree declaring the defendants trustees, for the benefit of the plaintiff, of an undivided three-eighths interest in the Sarah quartz lode (patented) claim, situated in Summit Valley mining district, Silver Bow county.

The original complaint was filed on July 2, 1901. The Sarah claim was located by one Bartholomew Piva on January 1, 1883. The plaintiff became the owner of the undivided interest in-

volved herein by mesne conveyances from Piva in 1886 and 1887. One Herman H. Horst purchased an undivided one-half interest from Piva in 1884. The remaining interest of Piva was acquired by Horst in 1890. Horst died some time in the year 1900, and the defendant Joseph V. Long was appointed administrator of his estate, and is still acting as such. The other defendants are his heirs at law.

It appears from the amended complaint that the plaintiff and Horst, as tenants in common, applied to the United States, through the land office at Helena, for patent on August 12, 1890. The application was made in the name of Horst; he acting on behalf of himself and the plaintiff. He took entire charge of the proceedings, and plaintiff relied upon him to conduct them to a successful termination. It is alleged "that subsequently to the application by plaintiff and the said Horst for the patent as aforesaid, and during the progress of the said application through the said land office, the said Horst, for the purpose of defrauding and cheating this plaintiff out of his undivided three-eighths interest in the said Sarah lode claim, did willfully, falsely and fraudulently represent to the officers of the said land office that he was the sole owner of the said Sarah lode claim; that he well knew then, when he made such false and fraudulent representations, that this plaintiff was the owner of an undivided three-eighths of the said Sarah lode claim, and that all representations that he, the said Horst, was the sole owner of the said Sarah lode claim, were false and fraudulent; and that all representations that the said Horst was the owner of more than five-eighths of the said Sarah lode claim were false and fraudulent, and without any foundation in fact."

It is further alleged in substance, that thereafter, on October 5, 1894, in pursuance of the application so made and based solely upon the location made by Piva, the said Horst, by reason of his false and fraudulent representations as to his title so made to the officers of the Land Department, and under an erroneous construction of the law by said officers, secured a patent from the United States purporting to convey to him, as sole owner,

the said claim, in total disregard of the rights of the plaintiff; that all the acts and proceedings with reference to the procurement of the patent were done and carried out covertly and secretly, and that plaintiff had no notice or knowledge that Horst had secured the patent to himself as sole owner until late in the year 1901, when, for the first time, he was informed of the fact; that at the time the patent was issued Horst well knew that plaintiff was co-owner with him to the extent of an undivided three-eighths interest, and that all representations made to him to the contrary were false, and made for the purpose of cheating and defrauding the plaintiff out of his interest; that during his lifetime, while the proceedings for patent were in progress and after the patent was issued, Horst by his statements made to plaintiff and others, that the patent was intended to be and had finally been issued to plaintiff and Horst, led the plaintiff to believe that such was the fact; that after the death of Horst he found that these statements were false, and that Horst claimed to be the sole owner under the patent; that plaintiff does not know and has no means of knowing what expenses Horst incurred in securing the patent, but that during the proceedings for patent Horst had in his possession money belonging to plaintiff sufficient to pay plaintiff's share of the expenses, but that notwithstanding this fact, plaintiff is still ready, willing, and able to pay any amount to the defendants which the court may adjudge to be his share of such expenses. Judgment is demanded that defendants be held trustees for plaintiff, that they be required to execute to plaintiff a deed conveying to him his interest, and that he have such other and further relief as to the court may seem proper.

The defendants, by their answer, put in issue all the allegations of the complaint, showing a trust relation between the plaintiff and the defendants as successors of Horst, as well as all the facts and circumstances alleged therein tending to show that Horst had committed a fraud upon the plaintiff. It is then alleged affirmatively that the application for patent was made on August 12, 1890, as alleged in the complaint; that pending

the application for patent, and during the year 1892, Horst, for the purpose of holding the Sarah claim and preserving the same from forfeiture under the laws of the United States, expended, in procuring labor to be done and improvements made thereon, the sum of $100, this being the amount necessary to prevent the claim from becoming forfeitable during that year; that during the year the plaintiff neither did any work nor put any improvements upon the claim in any amount, nor contributed any portion of the amount expended by Horst; that after December 31, 1892, Horst demanded of plaintiff his proportion of the amount expended by Horst for the purpose aforesaid, but the plaintiff failed and refused to pay his proportion; that thereupon Horst caused the notice provided for in section 2324 of the Revised Statutes of the United States (U. S. Comp. Stats. 1901, p. 1426) to be published for the full period required in the semi-weekly "Inter-Mountain," a newspaper of general circulation nearest the said mining claim, directed to plaintiff, and demanding payment by him of $37.50, his proportionate share of said expenditure made by Horst required for the year 1892; that plaintiff failed to reimburse the said Horst in any amount whatever at any time for the expenditures so made; that thereafter the said Horst, having filed for record in the office of the county clerk and recorder of Silver Bow county a copy of said notice of forfeiture, together with his affidavit in due form, claiming the benefit of the provisions of said section 2324 (U. S. Comp. Stats. 1901, p. 1426), presented said proof of forfeiture, together with a complete abstract of the title of the Sarah lode, to the register and receiver of the United States Land Office at Helena, Montana; that he paid to them all sums of money necessary in order to procure patent; that thereupon the patent was issued to him on October 5, 1894; and that he then went into possession of the claim openly, and since that time has been in the open and notorious possession thereof, claiming it as his own. As further defenses, defendants plead the following sections of the statutes of limitation, viz.: Subdivision 4 of section 524, and 518 of the Code of Civil Procedure.

The reply admits the necessity of doing the ·representation work for the year 1892, but denies that Horst did it as alleged in the answer. It also denies all the other affirmative allegations therein. Upon the trial the court found the issues in favor of the plaintiff. It having further found, through a referee appointed to ascertain the amount, that the proportionate share of the plaintiff in the expense of procuring patent was the sum of $93.18, and that this sum had been deposited with the clerk for the defendants, entered judgment in accordance with the findings, declaring defendants trustees for the benefit of the plaintiff, and requiring them to execute a deed to him for an undivided three-eighths interest. From this judgment and an order denying them a new trial, the defendants have appealed.

The defendants challenge the integrity of the judgment upon alleged errors of law in admitting and excluding evidence, and the insufficiency of the evidence to sustain the findings. They also insist that it is apparent from the pleadings and proof that the plaintiff has been guilty of laches, and should not be permitted to recover on that ground.

1. The plaintiff, having been sworn as a witness, was permitted, over the objections of defendants, to testify as to matters of fact occurring before the death of Horst, and particularly as to conversations between him and Horst as to the patent proceedings, settlements of accounts between them tending to show a balance in favor of the plaintiff, and declarations of Horst as to whether the plaintiff was named as one of the grantees in the patent; Horst then having the patent in his possession, but not at hand so that he could show it to plaintiff, who had requested to see it. The objection made was that, under section 3162 of the Code of Civil Procedure, as amended by the Act of 1897 (Laws, 1897, p. 245), plaintiff was not a competent witness as to such matters. This section, so far as it is pertinent here, provides: ''The following persons cannot be witnesses: ＊ ＊ ＊ (3) Parties or assignees of parties to an action or proceeding, or persons in whose behalf an action or proceeding is prosecuted, against an executor·or administrator, upon a claim or demand

against the estate of a deceased person, as to any matter of fact occurring before the death of such deceased person.''

There is a conflict of opinion among the courts as to the application of the statute; the conflict being due to a difference of opinion as to the meaning of the terms ''claim'' and ''demand.'' Section 1880 of the statute of California (Deering's Code) is identical with the above section, except that in the latter the term ''assignor'' is used instead of the term ''assignee.''· This substitution of terms, however, does not substantially affect the object or meaning of the provision, and for present purposes it may be treated as identical with the above provision of our Code.

In the case of *Myers* v. *Reinstein*, 67 Cal. 89, 7 Pac. 192, an action against the personal representative of a deceased trustee to establish a resulting trust in land, the title to which had been taken by deceased, the court held that the *cestui que trust* was a competent witness to establish the trust, on the ground that the action was not upon a claim or demand against the estate within the meaning of the statute. This case was cited with approval in the later case of *Tyler* v. *Mayre*, 95 Cal. 160, 27 Pac. 160, 30 Pac. 196, wherein it was held that the plaintiff was a competent witness to establish and enforce a trust against the personal representative, even though it incidentally tended to establish a contract beween the plaintiff and the deceased during his lifetime.

In *Moore* v. *Schofield*, 96 Cal. 486, 31 Pac. 532, a case in which the plaintiff sued to recover upon a joint obligation against two defendants, and one of whom died after suit brought, it was held that neither the plaintiff nor the other defendant was a competent witness. The court, after remarking that the question in the case of *Myers* v. *Reinstein* was whether certain property belonged to the estate of the deceased, says: ''It [*Myers* v. *Reinstein*] was an action or proceeding, then, against an executor to recover property which the executor claimed against the estate. It would, indeed, seem to be a claim or demand against the estate. But that was the very question upon which the decision was made to turn, and it was held that it was not. Whether

right or wrong, therefore, it is no authority here.'' The holding of the court in *Moore* v. *Schofield* was evidently correct, but the expressions used seem to discredit the *Reinstein Case.* However this may be, in the still late case of *Poulson* v. *Stanley,* 122 Cal. 655, 68 Am. St. Rep. 73, 55 Pac. 605, an action against an administrator to quiet title, it was held that the plaintiff was a competent witness to establish the delivery of a deed to herself by the decedent. The case of *Myers* v. *Reinstein* is cited with approval. In this case, and in *Myers* v. *Reinstein,* the court proceeds upon the theory that all persons are to be regarded as competent witnesses, unless they fall clearly within the exception provided in the statute; and, since actions to quiet title or to establish a trust do not involve claims or demands against the estate, the parties or their assignors are competent to testify to matters of fact occurring during the life of the deceased, and this may be regarded as the settled law of that state.

Upon consideration of a similar statute, however, the supreme court of Utah reached the opposite conclusion. *Wood* v. *Fox,* 8 Utah, 380, 32 Pac. 48, was an action against Fox as executor of one Lawrence, deceased, to establish a trust in certain mining property and stock, and for an accounting. The plaintiff offered himself as a witness as to matters of fact occurring during the lifetime of the deceased. The evidence was excluded, and the appellant assigned error. Speaking for the court, Blackburn, J., said: ''This testimony comes clearly within the terms of the statute. It is not only a claim against the estate, but one for many thousand dollars; and I think the trial court held rightly on that point.'' On appeal to the supreme court of the United States, that court held that the Utah court was right. It criticises the case of *Myers* v. *Reinstein,* and declares the reasoning upon which it proceeds unsound, saying: ''The supreme court of Utah properly rejected the suggestion that such claim or demand was not against the estate of Lawrence. To say that the only issue here was whether the real property and stock described in the petition constituted a part of Lawrence's estate, and that no claim or demand was asserted against the estate,

would be to defeat what, it seems to us, was the manifest object of the statute." (*Whitney* v. *Fox,* 166 U. S. 637, 17 Sup. Ct. 713, 41 L. Ed. 1145.)

The supreme court of Idaho in the comparatively recent case of *Rice* v. *Rigley,* 7 Idaho, 115, 61 Pac. 290, after a review of the cases, held that an action against a personal representative to establish a trust in lands claimed by the estate was the assertion of a claim or demand against the estate within the meaning of the statutes, and brought the parties and their assignors clearly within the disability prescribed by it. The court repudiates the rule of the California court, as giving too narrow a meaning to the terms "claim" and "demand." After defining the word "demand," and holding that it includes causes of action of all kinds, it says: "Therefore, if plaintiffs had no claim or demand against the estate of said deceased, they cannot evade the intent and purpose of said statute by attempting to ingraft a trust thereon, whereby they can secure a large share of said mining claims, the legal title to which is in the name of said deceased."

The word "claim" is comprehensive. "It is in a just, juridical sense a demand of some matter as of right made by one person upon another, to do, or to forbear to do, some act or thing as a matter of duty." (*Prigg* v. *Pennsylvania,* 16 Pet. (U. S.) 539, 10 L. Ed. 1060; Anderson's Law Dictionary.) The term "demand," according to Lord Coke, "is the largest word in law, except 'claim'; and a release of all demands discharges all sorts of actions, rights, titles, conditions before and after breach, executions, appeals, rents of all kinds, covenants, annuities, contracts, recognizances, statutes, commons," etc. (Bacon's Abridgment, title "Release," 283. See, also, *Vedder* v. *Vedder,* 1 Denio (N. Y.), 257.) And these are the ordinary, popular meanings assigned to these terms. So that it seems clear that both terms are used in the statute in their broad, comprehensive sense and apply to all sorts of causes of action against the estates of dead men, whether for money claims or for property which, but for the establishment of the claim or demand, would belong to the estate.

It could not for a moment be doubted that if, in the present case, the defendants had presented as a part of their defense a release executed by the plaintiff to the deceased, Horst, in his lifetime, acquitting him of all demands against him whatsoever, the district court would have held, and rightly so, that the plaintiff had no cause of action against his estate.

It seems to us that the California court, in holding as it does, overlooks the plain purpose and intent of the provision, and permits the very wrong that it was intended to prevent, to-wit, the establishment of claims or demands of any kind against estates by interested persons whose statements cannot be contradicted. And it seems to be begging the question when the court states, as it does, in the *Reinstein Case,* in referring to the claim sought to be established therein: "If it was a part of his estate, then no trust existed; if the trust existed he [deceased] held it in trust in his lifetime, and the interest passed to his successors to the legal title, clothed with the trust. To hold that the claim or demand here attempted to be enforced was a part of the estate, and thus render the witness incompetent, would be to determine in advance the very question to be determined on the trial of the action. By so holding we would assume the very question to be tried and settled by the contestation between the parties." While our statute was doubtless adopted from the Code of California, the construction given to it by the courts of that state does not seem reasonable. We decline to follow it under the rule usually applied in such cases.

But, while the testimony referred to was improperly admitted, we are of the opinion that the judgment should not be reversed for that reason. As we shall hereinafter point out, there was ample evidence in the case to support the findings of the court, even though this testimony ought to have been excluded.

Several witnesses were permitted, over objection by the defendants, to testify to declarations made by Horst in his lifetime, and after the issuance of patent, that plaintiff was still the owner of an undivided three-eighths interest in the claim, and also to the fact that Horst joined with the plaintiff in two leases

of the claim; the second having been made as late as the year 1899, and included an agreement to sell the claim to the lessees upon the fulfillment of certain conditions. All these matters were in effect declarations of the deceased in disparagement of his title. They were, therefore, clearly competent against his successors in interest. (Code Civ. Proc., secs. 3125, 3146, subd. 4; 2 Wigmore on Evidence, sec. 1081.) But,. if this were not so, the evidence was still competent as tending to show concealment of his fraud in securing the patent, to the exclusion of the plaintiff, and thus to excuse or rebut any charge of laches to which the plaintiff might otherwise have been subject for his delay in bringing the action to establish his interest.

The plaintiff was permitted in rebuttal to introduce in evidence, over objection, the judgment-roll in a cause entitled *"Rueger et al.* v. *Horst et al.,"* from the records of the district court of Silver Bow county. The action had been brought in 1891 in pursuance of section 2326 of the United States Revised Statutes (U. S. Comp. Stats. 1901, p. 1430), for the purpose of establishing an adverse claim by Rueger et al. to a portion of the ground covered by the Sarah lode, and judgment had gone for the defendants. The evidence was introduced to show that in 1892 an application for patent had been made and was then pending. The theory of plaintiff was that after the application for patent had been made and notice thereof had been published, the doing of the annual representation work upon the claim was not required, and hence his right as cotenant with Horst could not be forfeited, under the provisions of section 2324 of the Revised Statutes (U. S. Comp. Stats. 1901, p. 1426). The record, however, shows that this same judgment-roll was introduced as a part of plaintiff's case in chief, and without objection. For what purpose it was so introduced does not appear. The objection made upon the second offer was general, and no motion was made to strike it from the record. Under such circumstances. even if the objection to the second offer had been sustained, the evidence would still have been left in the record. We think there was no error, even upon the assumption that the evidence was obnoxious to the general objection.,

For another reason there was no prejudicial error in the ruling. The findings of fact show that the court did not decide the case on the theory advanced by plaintiff, but upon the theory that the claim by Horst that the work had been done by him was false, and that any publication of the notice and proof upon which he based his claim of forfeiture was false and fraudulent. The ruling, if wrong, could not therefore have been prejudicial.

Just here we notice the contention of the parties as to the effect of the forfeiture proceedings by Horst and the issuance of patent to Horst exclusively, in pursuance thereof. It is argued by appellants that the proceedings in the land office became final and conclusive upon the respondent, and that the court could not inquire into the question whether the work had actually been done by Horst in 1892. The respondent assumes the position that the whole matter was still open for investigation, and that the forfeiture proceedings could be of no avail to shut out the respondent if the work had not, in fact, been done; for since, though the work was necessary after application had been made, no forfeiture would become effective in favor of a third person who did not comply with the law touching the relocation of the claim, it could not for the same reason become effective in favor of a co-owner who had not in fact done the work, no matter what notice may have been given. With this view we agree. We do not see how *ex parte* proceedings by a co-owner under the statute, if the work had not actually been done, could have any more force or effect than a forged deed. If, instead of falsely representing to the Land Department that the plaintiff had forfeited his interest, Horst had forged a deed in the name of the plaintiff and presented it to the department, the patent would have issued. Nevertheless, no one would contend that under these circumstances the plaintiff could not successfully avoid the deed, have it set aside, and thus recover his interest. The statute upon which the defendants rely is one of forfeitures. It must be strictly construed. (*Brundy* v. *Mayfield et al.,* 15 Mont. 201, 38 Pac. 1067; *Turner* v. *Sawyer,* 150 U. S. 578, 14 Sup. Ct. 192, 37 L. Ed. 1189.)

In *Brundy* v. *Mayfield et al., supra,* the plaintiff sought to have the defendants declared trustees for his benefit of an interest in a certain mining claim. The defendants had obtained the patent to the exclusion of the plaintiff, who owned an interest therein, by representing to the Land Department that the plaintiff had not contributed his share of the representation work during certain years and prior to the application for patent, and that they had published the notice provided by the statute. The district court found that the representations were false, and that the plaintiff had, in fact, contributed his share of the necessary expenditures. The court, in affirming the judgment, held that, since the ground of forfeiture did not in fact exist, the mere publication of the notice did not conclude the plaintiff. The court in this case found that the work had not in fact been done by anybody for the year 1892, and hence that the publication of notice was not effective for any purpose. If any authorities were needed, we deem the case of *Brundy* v. *Mayfield et al., supra,* conclusive. (See, also, *Golden & Cord Lode Mining Claims,* 31 L. D. 178.) Since this view is conclusive, it will not be necessary to consider whether, after application for patent and completion of publication of notice, any further annual work on the claim is necessary.

2. Appellants contend that the plaintiff's cause of action is barred by the provisions of section 518 of the Code of Civil Procedure, which provides that an action for relief not theretofore provided for must be commenced within five years from the time it has accrued. It is said that the plaintiff's cause of action accrued at the time the patent issued, and since this action was begun in July, 1901, the court should have sustained this defense. It is sufficient answer to this contention to say that this section does not apply, for the reason that if any of the limitations touching the actions other than for the recovery of real property, to which class section 518 belongs, apply, the limitation provided for a case of this kind is found in the Act of 1893 (Session Laws, 1893, p. 50), which, under the provisions of sections 5184 and 5186 of the Political Code of 1895, was con-

tinued in force and brought into the Code of Civil Procedure as section 524, and as a substitution for section 513. (*Palatine Ins. Co.* v. *Northern Pac. Ry. Co.*, 34 Mont. 268, 85 Pac. 1032.) This provision (subdivision 4) declares that "an action for relief on the ground of fraud or mistake (the cause of action in such case not to be deemed to have accrued until the discovery by the aggrieved party of the facts constituting fraud or mistake) shall be commenced within two years."

If the cause of action stated be construed as one for relief on the ground of fraud or mistake, then it is clearly not barred. That it must be so construed, we think, there is no question. The very gist of the action is the fraud perpetrated by Horst in his false representations to the Land Department of the United States, whereby he secured the patent for himself, to the exclusion of plaintiff, and in concealing thereafter the fraud thus successfully accomplished. The purpose of the action is to make his estate yield up to the rightful owner the property wrongfully obtained by his fraud and compel a recognition of plaintiff's title, with which he has never parted. It appears clearly from the proof that the application for patent was made by Horst for himself and plaintiff, and that after the judgment was rendered in favor of the defendants in the adverse suit of *Rueger et al.* v. *Horst et al.*, Horst conceived the idea, and carried it out, of excluding the plaintiff from his interest. After having obtained the patent, he did not put it on record, and by his acts in conjunction with the plaintiff in connection with the property thereafter, until as late as 1899, tacitly informed the plaintiff that he was still the owner of his interest, as he had a right to expect, under the patent.

Counsel for plaintiff contends, however, that this is an action for the recovery of an interest in real estate or growing out of the title thereto, and that sections 483 and 484 of the Code of Civil Procedure provide the limitation within which actions for the recovery of real property and for actions arising out of the title to real property shall be begun. He cites *Murphy* v. *Crowley*, 140 Cal. 141, 73 Pac. 820, and makes a plausible argument in

support of his position. It is not necessary, however, to decide the question involved in this contention. It is immaterial whether either of these provisions or section 524 applies. The appellants rely upon section 518, and, as we have above pointed out, this has no application whatever.

3. The next contention is that upon the pleadings and the evidence the plaintiff cannot recover. There is no assignment of error in the brief of counsel challenging the sufficiency of any of the pleadings. We shall not, therefore, consider the argument that the complaint is insufficient. We shall assume that it is sufficient, and consider the question whether the evidence is sufficient to sustain the findings of the court, since this assignment is properly made.

Without undertaking an analysis of the evidence in detail, we find that it conclusively establishes these facts: That at the time the application for patent was made, in 1890, the plaintiff was the owner of an undivided three-eighths interest in the Sarah lode by deed from a common source of title with Horst; that the application for patent was made by Horst for himself and plaintiff, Horst having exclusive charge of the proceedings; that the adverse suit instituted by Rueger et al. in 1891 was finally determined by a judgment in favor of Horst and the plaintiff on February 15, 1893, by a stipulation of all the parties to the suit, including the plaintiff; that in the month of May of that year Horst published notice of forfeiture of plaintiff's interest; that the proof of publication was filed in the land office at Helena on April 25, 1895, nearly a year afterward; that patent was issued to Horst on October 5, 1894; that the patent was never put on record until after this action was brought; that Horst and the plaintiff on two occasions after the date of the patent joined in executing leases to different parties for the patented property, one executed as late as 1899, containing also an agreement for a sale of the property; that during none of the negotiations connected with these transactions did Horst claim to be the exclusive owner, but repeatedly declared, in effect, to those

making inquiry as to the state of the title that the plaintiff still owned his interest; that no work was done by the owners of the claim at all after the year 1892; that the plaintiff lived during the years after the issuance of patent at some distance from the location of the claim and from the residence of Horst; that the latter never took exclusive possession of the claim; and that his first knowledge of the violation of his rights by Horst was conveyed to plaintiff by one of the witnesses who testified at the trial, in July, 1901, a few days before this action was brought.

The court found these facts, and, further, that the representation work was not done in 1892, as claimed by Horst, and that no work was done during that year upon the claim to exceed in cost $35, and that, owing to the relations of the plaintiff and Horst, the plaintiff was prevented from making inquiry as to the condition of the title and thus discovering the fraud perpetrated by Horst.

These findings are amply supported by the evidence. Indeed, as to the work done in 1892, the evidence would have sustained a finding that Horst neither did nor caused to be done any work at all on the claim during that year, but that such as was done was done by Rueger and his associates, for it was done on the conflicting area between the Sarah lode and the Rueger location; and the preponderance of the evidence shows that Rueger and his associates did the work. In our opinion, not only does the evidence not preponderate against the findings of the court, express and implied, but it is clear and convincing that Horst acted with a deliberate intent to defraud the plaintiff, and purposely lulled any suspicion the plaintiff might have entertained under ordinary circumstances, and thus prevented the inquiry which an ordinarily prudent man would have been expected and required to make to protect his rights. The case falls within the rule that this court will not, under the statute applicable to equity cases (Act of 1903 [2d Extra. Session], p. 7), disturb the findings of the trial court when the evidence does not clearly preponderate against them. (*Bordeaux* v. *Bor-*

*deaux,* 32 Mont. 159, 80 Pac. 6; *Finlen* v. *Heinze,* 32 Mont. 354, 80 Pac. 918.)   So that, excluding the evidence heretofore held to be incompetent, the findings of the court must be sustained.

4. Finally, it is said that the plaintiff has slept upon his rights, and that a court of equity should not now hear him complain.   The rule invoked is well stated in *Hammond* v. *Hopkins,* 143 U. S. 224, 12 Sup. Ct. 418, 36 L. Ed. 134.   This case, however, does not call for an application of the rule.   The situation of the parties has not changed.   The value of the property does not appear to have changed since patent was issued.   Knowledge of the conditions did not come to the plaintiff until after Horst died.   The inquiries which the defendants insist plaintiff was bound to have made as to the condition of the title were prevented by Horst himself, for, since he was the active agent and was managing the patent proceedings, the plaintiff must have put trust in him.   Besides, after the patent issued, they still dealt with the property as if they were joint owners; and under these circumstances, it was but natural that an ordinary man, such as plaintiff seems to have been, would forego inquiry.   Especially is this so since the property was not developed by Horst during his lifetime.   If he had taken exclusive possession and its value had been demonstrated through expenditures and effort by him, the plaintiff being silent in the meantime, the lack of inquiry would doubtless have convicted the plaintiff of laches. As soon, however, as he found out the betrayal of his trust by his associate, the plaintiff acted promptly; and this fact, coupled with the additional fact that he had no greater inducement to act then than he would have had at any earlier date, in the light of all the other facts in the case, relieves him of this charge.

Many other errors are assigned; but upon examination of the record and the contentions made by counsel in support of them we have concluded that they are without merit.

The judgment and order are affirmed.

*Affirmed.*

MR. JUSTICE HOLLOWAY and MR. JUSTICE SMITH concur.